Mr. Dasler is appearing by Zoom. Okay, Mr. Dasler, go ahead. I guess, to start off, I don't know if it's appropriate to have, if there are any particular areas that justices are interested in hearing about, but I know I won't be able to get to everything in ten minutes. Why don't you start with what you think is the most important for you. Sure, great. So, the root of this case is procedural fairness, the rights of parents to be involved in their children's medical care. Ms. Washburn was appointed as a therapist for my then two-year-old child during a child custody proceeding around February 2018 in my court order. This appointment designated her as the gatekeeper of the father and child's parental involvement in medical care. And where she uses private discretion to back that state power to hold her that right, it is an unconstitutional use of state power. Ms. Washburn's decision to sever my access to therapy was a malicious response to me asking for evidence of her therapy dog's training and credentials after that dog bit my child in the face during an appointment. Ms. Washburn didn't respond to my request, and then two days before my next appointment, she accused me of coaching my child to say that her mother gave her neck massages and shakes. These things were addressed by Ms. Washburn's subsequent actions, blocking my access to child's medical records, care, and other related torts. The lower court misapplied domestic relations extension in this case. Ms. Washburn is the child's therapist, and the only relevance to the domestic relations orders is how they adjust the limit that plaintiffs write to the 14th Amendment. The suit neither challenges nor interferes with domestic orders. It simply refers to those orders seeking compliance. Vermont court already denied Ms. Knapp's request to enjoin this suit in the 2021 order. In 2022, a hearing, Vermont court reaffirmed the appropriateness of this suit. In that hearing, the counsel stated, quote, his request is to go to federal court, not a domestic court. If he has any issue relative to the incident that occurred, he's exercised that right. The court responded yes, end quote. That's an excerpt from the May 2022 transcript, page 146, also cited in my brief. Now, where the state court has already affirmed federal jurisdiction is proper, there's no place for domestic relations extension. In Enkin, Brant, and Marshall, the U.S. Supreme Court has upheld federal enforcement of the state custody of decrees adjudicating short claims that arise with domestic relations content. And the court's misunderstanding of its power, I think, influenced its ability to even consider what claims were valid. So it made this blanket dismissal because it didn't understand that it's, that it's This is one of two recent lawsuits in the Vermont District Court arising from the use of corrupt therapists to obstruct parental access. The other being Sagalowski trauma, which was, which recommended plausible claims, but was dismissed for failure to prosecute when Ms. Sagalowski did not keep up during the pandemic. My paper resembles Ms. Sagalowski's state case, and her appeals of that custody case, Mr. Knutson v. Sagalowski, 2016 and 17, highlights the dangers of relying on Vermont family to recognize constitutional guarantees. Ms. Sagalowski fought for her rights for over a decade, culminating in a 2017 appeal that recognized, although she's a fit parent, the abuse allegations were false, and the harm entirely caused by the accusers, keeping the child negative towards her, Mr. Knutson could prevail on the fruits of an ex parte order, quote, on a credible factual basis, end quote, and also on the fruits of his own misconduct. Sir, the constitutional guarantees that you're saying that were interfered with are the, your, you said that there was a conspiracy to deprive you of the protection of the laws, and also your 1983 claim? Yeah, I'm saying, for example, if the state says, you can access your rights through this person, and then that person says, eh, I'd rather keep them for myself, well, there has to be enforcement. So in my case, I have to go through this. Does that depend on Ms. Washburn being part of the state? So if the state says that one parent has the right to choose a care provider, and that care provider sets rules about access by a parent or communication with parents, I mean, is that an exercise of state power? Well, it is because state power prevents me from going anywhere else. And to that, we have several theories. We've got the 1985 conspiracy, as well as court liability of conspiracy. When two people act in concert to achieve the same result, and I don't remember exactly the citation, but acting in concert, you become liable for the actions of the other. And in this case, you know, when the state appointed her, she has an obligation. She could withdraw and say, I don't want to provide care. But what she can't say is, I'm not going to provide access to parents. And we can look at several cases, like Westby, Athens, has the state appoints a medical provider, and then the medical provider refuses care. There's Section 1983 liability. It's true when private parties have turned to a discriminatory real estate agreement, as in Shelley v. Kramer. When the state enforces that, that becomes unconstitutional. And it's also true in Lugar v. Edmondson, where there's a pretrial attachment, but by a private party. So because the state is giving your ex-wife the authority to choose the care provider, and the care provider is limiting access, you're saying the state is therefore limiting access. I'm saying that the state power enforcing private discretion is what elevates a private harm to an unconstitutional one. Okay. I mean, because that's the key difference. And part of my point is, is this a function of select – and I should say, it's the date. The February 28th order doesn't say Ms. Knapp can choose. It says the parties must use Darlene Washburn. So it was a state order that chose Darlene Washburn. And then I would need a court order to change that. And short of a court order to change that, I'm obligated to use only this one provider. And again, it's – that's what elevates this to a state issue. I mean, it would be a private issue between parties, if not for state power saying you can't go anywhere else. And then, you know, then we get into the private agreement between parties with a secondary issue. And I know Section 1985 historically has been applied to only class-based issues. But as I say in my brief, that has to change after Willowbrook because now a class of one is a legitimate class. And all the precedents saying otherwise in Section 1985 – Would have been implicitly overruled. I think I have that argument. Thank you very much, Mr. Dassler. You've reserved time for rebuttal, so we'll hear from you again. But let's hear from the appellee, Ms. McDonald. Good morning. May it please the Court. Jennifer McDonald on behalf of Appellee Darlene Washburn. Your Honors, I think what you've heard this morning and what you've seen in the briefs is this is, at the very heart of it, a custodial dispute between two parents, Mr. Dassler, the non-custodial parent, and Ms. Knapp, his ex-wife. This case against Ms. Washburn, the appeal, is the second appeal against Ms. Washburn by Mr. Dassler, is one of a series of efforts to challenge the Vermont Family Court's decision, long-running efforts by Mr. Dassler to appeal the custody ruling of the Vermont Family Court. But he's not actually challenging the custody ruling in this action, right? He's alleging misconduct on the part of the therapist. No, actually, Your Honor, I would disagree with that, because at the heart of this is Ms. Knapp, who is the ex-wife, chose a therapist. She is the custodial parent. She has the ability and power and legal authority granted to her by the Vermont Family Court to make decisions, to choose a therapist for her child. Now, that decision has been approved by the Vermont Family Court. Mr. Dassler has a right to access his child's records, and that, but at the heart of this is really, he does not like Ms. Washburn being his child's therapist. The Vermont Family Court has already overseen the discovery disputes, the subpoenas for records. But if you claim and you say that the misconduct is the therapist limiting access to the child or to records and so on, that doesn't require you to revisit the custodial questions, right? It might just lead to an order that says this therapist, if it's going to be the required therapist, must act in a way that allows him the access that he's seeking. That's the relief he's seeking. He doesn't want to revisit the custodial orders. And that was all addressed, and he may not want to revisit the custodial orders. I'm not entirely clear. Maybe he does or doesn't, but this case doesn't involve that, right? Well, the case does involve the Vermont Family Court's decision because the Vermont Family Court has already addressed exactly that record access. That was all part of the Vermont Family Court proceeding. He subpoenaed records from my client in the Vermont Family Court proceeding. My client produced those records in the Vermont Family Court proceeding. That subpoena is referenced in his brief because at one point he subpoenaed her deposition to obtain information. There was an agreement between his prior counsel and her family court attorney, who is not me. So you're arguing that actually the case is precluded? Is there a res judicata effect if you think it's already been litigated in the state court? I think that this case, well, if you talk about the state claims, and I want to isolate exactly the claim because I'm not entirely sure that there is a cause of action to compel records in the federal court proceeding. He has the two federal causes of action, the 1983 and the 1985 actions. So that doesn't have to do with the records. He has a breach of confidence under Vermont. Well, I guess if the denial of rights in the 1985 one is access to the child, maybe that does affect the records. I think if the access to the child then would be quintessential to custody dispute, Your Honor, that has to do with the family court proceeding. And then we get into the domestic relations issue. I mean, I guess I understand that argument. So I'm thinking about domestic relations abstention. So if the relief he's seeking is he thinks that the care provider needs to behave differently than she is, I just don't see how that's affecting the state's prerogative to decide matters of domestic relations. I think if the question is the care provider is not producing records to him that he's entitled to as part of the parental rights and responsibilities decision for the family court that it does. If there is a separate cause of action, it hasn't been pled here. So there is no claim in this case against Ms. Washburn that has to do strictly with you have not produced records to me. They are the child's records. He has a right to the records because he is a parent and because the Vermont Family Court has allowed him to have rights to those records. All right. So even if the relief were that actually a different care provider should be chosen, would that be a matter of domestic relations? Would domestic abstention apply to that? Absolutely, because Mr. Destler is not the custodial parent, and the Vermont Family Court has already addressed what his rights and responsibilities are. So the decision to select a different care provider is quintessentially within that Vermont Family Court case. In fact, in the September 30, 2022 order, denying his motion to modify parental rights and responsibilities, the family court stated, and this is a quote, the crux of the issues raised in father's motion to modify stem from significant animosity and distrust between the parties and father's disagreement with mother's decision to continue TD in counseling with Ms. Washburn. So all of this relates to the issues that already were pending before the Vermont Family Court, were resolved by the Vermont Family Court, and just to be clear, the Vermont Family Court docket remains open. It remains something that a motion could be filed within that Vermont Family Court docket. It can't be filed by Mr. Destler because he's precluded from representing himself and making filings into that court because of his abuse of the system. He can retain counsel. His attorney could make filings in Vermont Family Court in that docket, which continues to exist today. So he has access to the relief he seeks in another docket. And, again, I kind of want to go back to what are the claims in this case? What were the claims actually before the Vermont District Court? And it's not access to records. There is no he may complain about access to records, but there is no cause of action that gives him a right to access records, which, again, have already been addressed in the Vermont Family Court, and we disagree with that. We believe he has had all the access to records. So if we're looking at this case, the initial claim had to do with the dog bite allegation, and he has refused to obtain counsel who can represent him in the Vermont District Court on behalf of his daughter. And that is a clear, clear black letter law from the Second Circuit, that he cannot represent pro se the interests of his daughter in this court. We have the 1983 claim. Ms. Washburn is a private therapist. She is in private practice. It seems kind of so simple in my mind, but to suggest that any time a family court hears evidence or approves a private therapist for a child, that they become a state actor, that is just unbelievable. We would never have people taking on these roles because they would all of a sudden be a state actor and could be sued under 1983. Ms. Washburn is a solo practitioner in a small town in Vermont. She is certainly not employed by the state. She has not received any benefits from the state. She has not acted on the state. I'm sorry. I was wondering what you said about the 1985 claims. That doesn't require her to be a state actor. What about that? With respect to the 1985 claim, although the definition of class has not been construed very narrowly, Mr. Dassler, as the noncustodial parent, is not a class of one for the purpose of 1985. It does not expand to his situation. I guess you would say even if there was a possibility of him being a class of one, if you could allege there was some kind of special animus against him and not against a comparator, you would say that the claim would fail for other reasons. There's no conspiracy alleged here. There is no injury alleged here. I don't even know what the discriminatory animus is in this case. Well, there is an injury. I mean, he wants to direct the treatment of his child in a way that he's prevented from doing, so that's an injury. I mean, whether that is an injury protected by the Constitution might be a separate question. And I would argue that that could not be an injury protected by the Constitution with respect to one parent versus another. We would expand this 1985 issue to all parents in any custody dispute. He is the noncustodial parent. If he wants to direct the care of his child, he needs to hire an attorney and file a motion in the Vermont Family Court. So that takes care of the 1985-1983 claims. There's a series of state law claims. Again, the breach of contract and implied covenant all relate to the discovery dispute in the Vermont Family Court with respect to the deposition of Ms. Washburn and the subpoena process. There is no contract between Mr. Dassler and Ms. Washburn. The agreement that he talks about is an agreement between attorneys in connection with that Vermont Family Court proceeding. Negligent infliction, he's clearly not been in the zone of danger in any respect. And then defamation, I find this to maybe one of the more egregious causes of action. He alleges that statements written by my client in therapy records have caused him harm. And to suggest that a therapist cannot record notes as part of the therapeutic process without the risk of being sued for defamation is egregious. So, Your Honors, I respectfully request that you affirm the district court's decision in favor of my client. Thank you. Okay, thank you very much, Ms. McDonald. We'll turn back to Mr. Dassler on the phone. Sorry, Mr. Dassler, you're on mute, so we cannot hear you. A bunch of issues. First, there are clearly a bunch of issues of dispute. The records were not provided after the deposition. I also want to just touch on my child's right to counsel. The Eighth Circuit has remanded when it said the district court abused discretion in parents' motion to appoint counsel to their section 1983 suit, alleging a teacher retaliated against their minor child for expressing an opinion in violation of her or his human rights. Because delaying the suit until the child reached majority entailed substantial delay and potentially prejudicing vindication of the child's institutional rights. That's a brochure on the U.S. side, 2020. In this case, you know, here, if there are some rights that are the child's rights, we have a child who has a right to her parents be involved in medical care, and that is fully severed by the medical provider just deciding not to allow the father to be involved. That should never be allowed. I mean, if a family court is doing its job, it has to recognize if the child's best interest is represented in the order, the father has equal rights under the order. When the therapist decides not to do that and the court simply says, in this case, well, she's not a party to the suit, well, it has to provide some redress. It's not adequate for the state to outsource its discretion to a private person and then say, sorry, they didn't feel like allowing you access to that right, and we're not going to provide any other form for you to access it. And again, there's no other form to access it per se, right? But an attorney could access it. Oh, no. I can still file into this case. Opposing counsel just lied about what that order is. First of all, I can apply for permission to file anything. But the problem is, and if you look at the order that they submitted into your brief, the abusive litigation order, it should be considered void. First of all, that statute was put into place in September 1st, 2023, and what the court did is retroactively apply it, basically no tie to any actual filing and just say there's a lot of filings in this case and we're going to consider it abusive without meeting the statutory definitions, without identifying any filing that's abusive, and therefore put pre-filing restrictions in place. And in doing so, vacated all of my existing filings without identifying them as abusive under the statute. Nothing about that order should be persuasive to this court at all because it absolutely violates my rights to fair notice, and wildly exceeded the court's jurisdiction, and it's under appeal currently. Okay. Thank you very much. You want to make one final point because the time is elapsed? Yeah, sorry. One last thing. The Sixth Circuit in Kanskowski also states very clearly that medical right to exercise decision-making is the parent's right because the child is not of competence to do so. That's the 2019 Kanskowski decision fully supports. I need to be on. Okay, we have that argument. Thank you very much, Mr. Dassler. The case is submitted.